**The STATE of Ohio**

v.

**WEINSTEIN.**█

Hamilton County Municipal Court.

No. C 94 CRB 17837.

Decided April 17, 1995.

34

*Steven R. Adams,* Hamilton County Assistant Prosecuting Attorney, for plaintiff.

*Gregory A. Cohen,* for defendant.

MICHAEL K. ALLEN, Judge.

This matter is before the court for decision on defendant's motion to suppress.

At approximately 2:45 a.m. on June 5, 1994, Officer Robert Stewart of the Blue Ash Police Department was on routine patrol when he observed the defendant, Debra Weinstein, driving alone on Ronald Reagan Highway at an excessive rate of speed. Officer Stewart stopped the defendant, administered field sobriety tests, and subsequently arrested and charged defendant for driving under the influence. After defendant was placed in the rear of the police cruiser, Officer Stewart then called for a wrecker to tow defendant's vehicle from the scene, as Officer Stewart did not wish to leave it unprotected. Prior to the wrecker's arriving, Officer Stewart made a search of defendant's vehicle. The search revealed a Tupperware container that was partially visible in a door pocket on the driver's side door. The Tupperware container contained rice, two glass vials, and a ceramic pipe. A white, powdery substance was found at the bottom of the glass vials, which field tested positively for cocaine. As a result of the items found in the search, defendant was charged with possessing drug paraphernalia in violation of R.C. 2925.14.

The defendant filed a motion to suppress, stating that the evidence was gained as a result of an unlawful, warrantless search of her car. Defendant maintains that the warrantless search was in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution. However, the state maintains that the search was justified as an inventory search performed as a normal procedure prior to the car's being impounded. The state further contends that the officer had the right to seize the article because it was in plain view. Both instances, of course, would preclude the necessity of a search warrant.

The issue before this court is whether the warrantless search of defendant's car conducted by the police officer was justified as an inventory search and, if so, whether the opening of the closed Tupperware container was justified. In addition, the court must determine whether the police officer was justified in seizing the Tupperware container if in fact it was in plain view.

An inventory search is one exception to the Fourth Amendment search warrant requirement. The United States Supreme Court has spoken several times regarding the validity and requirements of a proper inventory search. See *South Dakota v. Opperman* (1986), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Colorado v. Bertine* (1987), 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 and *Florida v. Wells* (1990), 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1.

In *Opperman,* the defendant's car was parked in a no-parking zone. After the car was towed and impounded, a police officer ordered that the car be unlocked in order to conduct an inventory search. The search of the unlocked glove compartment revealed a bag of marijuana, and defendant was subsequently arrested and charged with possession of marijuana. The *Opperman* court stated that inventory searches are performed to protect the owner's property while in police custody, to protect the police against claims or disputes about stolen property, and to protect police from potential dangers. 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. As a result, "the policies underlying the Fourth Amendment warrant requirement are not implicated in the context of an administrative inventory search." *State v. Hathman* (1992), 65 Ohio St.3d 403, 406, 604 N.E.2d 743, 745, citing *Opperman* at 370, 96 S.Ct. at 3097, 49 L.Ed.2d at 1006, fn. 5.

In *Bertine,* the defendant was arrested for driving under the influence. A police officer conducted an inventory search of the defendant's van and found a closed backpack which contained drugs, drug paraphernalia, and money. Defendant was charged with possession and moved to suppress the evidence. The *Bertine* court upheld the search because it was conducted in good faith and according to standardized procedure. 479 U.S. at 372, 107 S.Ct. at 741, 93 L.Ed.2d at 746, fn. 4.

In *Wells,* a Florida Highway Patrol trooper stopped defendant for speeding. Defendant was subsequently arrested for driving under the influence. The defendant's car was impounded and searched. The trooper found marijuana, and the defendant filed a motion to suppress. The *Wells* majority held that closed containers found during an inventory search may be *opened only if there is an articulated standardized procedure in that police department that regulates the opening of those containers.* 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1.

The Ohio Supreme Court has spoken on the issue of inventory searches in *State v. Hathman* (1992), 65 Ohio St.3d 403, 604 N.E.2d 743. In *Hathman,* the

court outlined three criteria for proper inventory searches: (1) An inventory search of a lawfully impounded automobile must be conducted in good faith and not be for the sole purpose of investigation, (2) An inventory search must be conducted according to a reasonable standardized procedure or established routine, and (3) If closed containers are discovered during the search, *they can be opened only if a standardized policy specifically governing the opening of closed containers exists.* In *Hathman,* defendant was stopped by the Ohio State Highway Patrol for following too closely. Hathman was taken into custody for failing to produce a license and driving a stolen vehicle. The car was searched prior to being towed, and the officers discovered a white plastic bag containing cocaine. Hathman was charged with aggravated drug trafficking, and he filed a motion to suppress. The *Hathman* court held that a general policy governing inventory searches is not enough to justify the opening of closed containers but that *"some articulated policy must also exist which regulates the opening of containers found during the authorized inventory search."* (Emphasis added.) *Id.* at 408, 604 N.E.2d at 746.

█ Through the testimony of Officer Stewart, the state was able to articulate routine and standardized inventory search procedures. Officer Stewart testified that prior to a wrecker's arriving, the procedure is to inventory the automobile to document any valuables. He stated that the purpose of the inventory is to protect the individual from losing property once it is out of police custody. However, as seen in *Hathman* and *Wells,* an inventory search is purely administrative in nature and can be poisoned if conducted with an investigatory intent. Furthermore, even if the search were found to be a proper inventory search, the state in this case cannot prevail. The record reflects no evidence of any standardized policy within the Blue Ash Police Department that permits the opening of closed containers found during an inventory search, as required by *Hathman* and *Wells.* Absent such a policy, it is clear that a police officer must not open closed containers.

The plain view doctrine is another exception to the search warrant requirement of the Fourth Amendment. The state in the case at bar asserts the plain view doctrine as an additional or alternate justification for the warrantless search of defendant Weinstein's car. In *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502, defendant Brown was stopped at a routine driver's license check point. Brown could not produce a license and was asked to step out of the car. The police officer saw balloons, small plastic vials and a white powdery substance. The police officer found heroin, and Brown filed a motion to suppress the evidence. The court held that a police officer may search suspicious items in plain view in an automobile, and it is not a violation of privacy if the police officer *has probable cause to associate the property with criminal activity. Id.* at 741–

742, 103 S.Ct. at 1543, 75 L.Ed.2d at 513. Justices Stevens, Brennan and Marshall in concurrence added that the plain view doctrine allows for the temporary seizure of property; however, there must be further justification by the state to open and use the contents of the property as evidence. *Id.*

In *State v. Brown* (1992), 63 Ohio St.3d 349, 588 N.E.2d 113, the case relied upon by defendant Weinstein, the defendant was arrested for driving under the influence. The police officer searched the defendant's car after placing him in the police cruiser. The search revealed an unlocked wooden box that contained drugs. The car was towed and was never inventoried. The court held that the search was unreasonable because the item was not in plain view, *the police officer did not have probable cause to believe the car contained drugs,* and the contents of the car were never inventoried. *Id.* at 352, 588 N.E.2d at 115. The court also stated that "an arrest for a traffic violation does not automatically entitle an officer to conduct a detailed search of the arrestee's automobile." *Id.* at 350, 588 N.E.2d at 114.

■ The plain view doctrine cannot justify the warrantless search of defendant Weinstein's car. *Texas v. Brown, supra,* requires that an officer have probable cause to associate the suspicious item with criminal activity. Clearly, the police officer did not have probable cause to believe defendant Weinstein's vehicle contained drugs. The state also finds no support in *State v. Brown, supra.* The case at bar and *State v. Brown* are on point with the only exception being that in *State v. Brown,* the closed container was in the glove compartment and in the case at bar the closed container was in a door pocket. In both cases, it is clear that there was no probable cause to search the defendant's vehicle for drugs or any other items.

Arguably, Officer Stewart may have seized the Tupperware container in defendant Weinstein's vehicle because it was in plain view. However, he testified that at the time he placed defendant in the back of the patrol car, he did not suspect her of having been engaged in any criminal conduct other than driving under the influence. Officer Stewart testified that when the Tupperware container was in the door pocket, all he could see was the rice inside the container. Officer Stewart also testified that he has never known drugs to be transported with or in rice, and he would not connect a container of rice with drugs. He opened the container only after removing it from the door pocket and seeing the glass vials. Probable cause must have existed before the container was opened, or the container must have been "discovered while acting within the proper scope" of a reasonable search based on probable cause. *Brown,* 63 Ohio St.3d at 352, 588 N.E.2d at 115. Defendant Weinstein was secured in the rear of a police vehicle and presented no threat of harm to Officer Stewart. Clearly, he had no probable cause to search the vehicle at that time.

The state has not established a proper inventory search in this case because it has not demonstrated a standardized policy for the opening of closed containers pursuant to *Florida v. Wells* and *State v. Hathman.* In addition, the seizure of the Tupperware container cannot be justified under the plain view doctrine in that Officer Stewart did not have probable cause to believe that defendant Weinstein's vehicle contained drugs.

## *JUDGMENT ENTRY*

Consequently, the Tupperware container and all of its contents are hereby suppressed, and all evidence, statements, field tests and laboratory reports and observations following the intrusion into defendant's automobile are further suppressed.

*So ordered.*